UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TERESIA EDMONDS, | } |
| Plaintiff, | } |
| v. | } Case No.: 4:17-cv-0056-RDP |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | } |
| Defendant. | } |

**MEMORANDUM DECISION**

Plaintiff Teresia Edmonds ("Plaintiff" or "Edmonds") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claims for a period of disability insurance benefits ("DIB"), disabled widow's benefits ("DWB"), and supplemental security income. *See* 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff filed applications for DIB and DWB on February 24, 2014. (Tr. 67, 91). She also filed an application for supplemental security income on February 6, 2014. (Tr. 79). In both of her applications, Plaintiff alleged her disability began on June 28, 2009. (Tr. 67, 79, 92). Plaintiff's initial applications were denied by the Social Security Administration ("SSA") on May 9, 2014. (Tr. 78, 90, 102). Plaintiff requested a hearing before an Administrative Law Judge on June 11, 2014. (Tr. 123). The hearing was set for December 7, 2015 with Administrative Law Judge Renee Blackmon Hagler ("the ALJ"). (Tr. 133). In her decision dated January 12, 2016,

1

the ALJ concluded that Plaintiff had not been under a disability within the meaning of Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act from June 28, 2009 through January 12, 2016. (Tr. 33). The Appeals Council denied Plaintiff's request for review on November 11, 2016. (Tr. 1-5). This denial was the final decision of the Commissioner, and therefore a proper subject for this court's appellate review.

**II.     Facts**

Plaintiff was born on August 19, 1960, and was 48 at the time of her alleged onset date. (Tr. 67). She alleges that she has been disabled since that time due to emotional stress and arthritis. (Tr. 67, 79, 92). Plaintiff has a high school education and her last employment as a Walmart customer service representative ended on February 5, 2009. (Tr. 44-45). She quit her job with Walmart after her son was diagnosed with autism. (Tr. 261). Plaintiff alleges that during her time at Walmart, she experienced pain in her back and would be limping by the end of the day. (Tr. 52).

Plaintiff did not seek medical treatment until April 12, 2014, when she went in for a consultative physical examination with Dr. Ronald Borlaza complaining of anxiety and chronic pain in her lower back, right thigh, and groin. (Tr. 25, 260). Dr. Borlaza noted that Plaintiff could perform common household chores, including washing dishes, cleaning, doing laundry, cooking, vacuuming, sweeping, and making her bed. (Tr. 260). Dr. Borlaza performed a physical examination and diagnosed Plaintiff with chronic right thigh and groin pain, chronic low back pain, and anxiety. (Tr. 263). He concluded that Plaintiff had no limitations for standing and sitting, had a maximum walking limitation of 6 to 8 hours, and could lift 100 pounds occasionally and 50 pounds frequently. (Tr. 263).

Plaintiff also underwent a consultative psychological evaluation with Dr. Mary Arnold on April 15, 2014. (Tr. 26, 266). Dr. Arnold found that Plaintiff was alert, had a subdued mood and "congruent affect," and based on her global assessment of functioning (GAF) level did not experience anything greater than moderate functional deficits. (Tr. 26, 267-68). Plaintiff told Dr. Arnold that she was able to clean the house, do laundry, take her son to school, run errands, and shop. (Tr. 267). Dr. Arnold evaluated Plaintiff as having a global assessment of functioning (GAF) level of 56, indicating that Plaintiff could have moderate difficulty in social, occupational, or school functioning. (Tr. 26, 268).

On April 23, 2014 Plaintiff visited Dr. Rommel Go to establish care. (Tr. 26, 272). She reported experiencing depression, anxiety, and insomnia. (Tr. 274). Dr. Go reported that there was no observed "anxiety, delusion, loose associations, flight of thought, stressed faces and or weeping." (Tr. 274). Dr. Go prescribed Plaintiff medication, which ostensibly began to control Plaintiff's symptoms. (Tr. 274).

In May 2014, Plaintiff saw Dr. Raymond Fernandez, who conducted an extensive examination. (Tr. 301). Dr. Fernandez found that Plaintiff had no depression, anxiety, or agitation, but suffered from hypertensive heart disease and possible aortic stenosis. (Tr. 307).

### III. ALJ Decision

Disability under the Act is determined using a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities for pay or profit. 20 C.F.R. § 404.1572. Work activity may be considered substantial even if it is part-time or if the claimant does less, gets paid less, or has less responsibility than when she worked before. 20 C.F.R. § 404.1572(a). Even if no profit is realized,

work activity may still be considered gainful so long as it is the kind of work usually done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant is engaging in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b).

Second, the ALJ must determine whether the claimant has a severe medical impairment or a combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, then she may not claim disability. *Id.* If the impairment is not expected to result in death, the claimant must also meet the 12-month duration requirement. 20 C.F.R. § 404.1509.

Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, and 404.1526. If the claimant meets or equals a listed impairment and meets the duration requirement, she will be found disabled without considering age, education, and work experience. 20 C.F.R. § 404.1520(d).

If the claimant does not meet the requirements for disability under the third step, she may still be found disabled under steps four and five of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work notwithstanding her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant is unable to perform past relevant work, then the analysis moves to the fifth and final step of the analysis.

In the final step of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20

C.F.R. § 404.1520(g). At this point, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 28, 2009, the alleged disability onset date. (Tr. 24). The ALJ found that the claimant had the following severe impairments: degenerative disc disease; anxiety; and depression. (Tr. 24). The ALJ noted that Plaintiff had also been diagnosed with hypertension that was controlled by medication. (Tr. 24). Dr. Go also reported that Plaintiff had a "loud systolic murmur," but the ALJ found that there was no presence of cardiovascular impairment based on the available objective medical evidence. (Tr. 24). Thus, the ALJ did not find that Plaintiff had severe impairments relating to hypertension or cardiovascular impairment. (Tr. 24). The ALJ advanced to step three of the analysis and determined that Plaintiff did not suffer from an impairment or combination of impairments that would meet or medically equal the severity of one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 24).

The ALJ then considered the record and found that Plaintiff had the RFC to perform medium work as defined in C.F.R. §§ 404.1567(c) and 416.967(c), with the exceptions that she can frequently stoop, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The type of work the ALJ found she could perform involves simple, routine tasks with occasional contact with her co-workers, supervisors, and the general public, but should not involve team-type positions.

Plaintiff's past relevant work as a clothes bagger did not require her to perform any of the activities that were precluded by her RFC. (Tr. 31). The ALJ therefore found that she was capable of performing past relevant work. (Tr. 31).

Because it was determined that Plaintiff was capable of performing past relevant work, the ALJ concluded that she had not been under disability, as defined in the Social Security Act, since June 28, 2009.

## IV. Plaintiff's Argument for Remand or Reversal

In her Memorandum in Support of Disability, Plaintiff argues the ALJ made three errors: (1) there was not substantial evidence to support the ALJ's finding that the claimant could perform past relevant work, (2) the ALJ failed to state with at least some measure of clarity the grounds for repudiating the opinion of Dr. David Wilson, and (3) the decision to deny benefits was not based on substantial evidence because the Vocational Expert's ("VE") testimony was based on an inaccurate and incomplete hypothetical question. (Pl. Br. at 10-22). For the reasons detailed herein, the court finds that each of these arguments lacks merit and substantial evidence exists to support the ALJ's findings.

## V. Standard of Review

The only relevant questions for this court to decide are whether the record contains substantial evidence to support the ALJ's decision, *see* 42 U.S.C.A. § 405; *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen,* 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 92 F.2d 129, 131 (11th Cir. 1990). Under Title 42 U.S.C. § 405(g), the Commissioner of Social Security's findings are conclusive so long as they are supported by "substantial evidence." The district court may not reconsider the facts, reweight the evidence, or substitute its judgment for that of the Commissioner. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The reviewing court must review the record in its entirety to determine whether the decision reached is reasonable and supported by the substantial evidence. *Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence is more than a mere scintilla but less than a preponderance of the evidence. *Id.* It is relevant evidence that a reasonable person would accept as adequate to support the conclusion reached. *Id.* (citing *Bloodsworth*, 703 F.2d at 1239). Even if the evidence preponderates against the Commissioner's findings, the Commissioner's factual findings must be affirmed if they are supported by substantial evidence. *Id.* Despite the limited review of the ALJ's findings, review does not automatically prompt the court to affirm. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## VI. Discussion

The court addresses each of Plaintiff's arguments for reversal but finds they each miss the mark.

### A. Substantial Evidence Supports the ALJ's Finding that Plaintiff Can Perform Her Past Relevant Work.

Plaintiff first argues that there was insubstantial evidence to support the ALJ's finding that she could perform past relevant work. (Pl. Br. at 10). Specifically, Plaintiff claims that the ALJ did not properly develop the record regarding the particular duties of Plaintiff's past work and failed to evaluate her ability to perform those duties in spite of her impairments. The court disagrees.

Plaintiff bears the initial burden of proving that she is unable to perform her previous work either as she performed it or as it is generally performed in the national economy. *Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991). The ALJ must evaluate the combination of the claimant's impairments with respect to the effect they have on her ability to fulfill the duties of her past relevant work, or other work in the national economy. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). For the ALJ to properly make such an evaluation, she must develop "a full and fair record" as to the duties and responsibilities of the claimant's past relevant work. *Schnorr v. Bowen*,

7

816 F.2d 578, 581 (11th Cir. 1987). The ALJ may rely on a VE's testimony regarding the physical and mental demands of past work, and may also consider the job descriptions set forth in the Dictionary of Occupational Titles ("DOT"). *See* 20 C.F.R. § 404.1560(b)(2).

Plaintiff argues that the ALJ failed to properly develop the record as to the duties and responsibilities of her past relevant work, and therefore the finding that she was able to perform past work is not supported by substantial evidence. (Pl. Br. at 10). However, the ALJ did hear testimony from a VE who found that Plaintiff could perform past relevant work and other work in the national economy. (Tr. 61-64). In particular, the ALJ asked the VE to consider a hypothetical individual with a similar background to Plaintiff – *i.e.*, an individual who could lift 50 pounds occasionally and 25 pounds frequently, sit at least six hours during the workday, stand and walk for at least six hours in a work day, frequently climb ramps and stairs, stoop, kneel, crouch, and crawl, but should not climb ladders, ropes, or scaffolding. (Tr. 63). The hypothetical individual also had "residual mental restrictions" limiting her to simple, routine tasks with occasional contact with coworkers and supervisors, and should not work in team-oriented positions and only have occasional contact with the general public. (Tr. 63-64).

Based on this set of facts, the VE found that such an individual could perform the jobs of a clothes bagger, a packer, a store laborer, or a machine packer. (Tr. 63). The clothes bagger job is one of the positions in the VE's initial vocational profile of the claimant's work history, and is considered past relevant work that Plaintiff could perform. (Tr. 62). Further, the jobs of packer, store laborer, and machine packer are also available in the national economy. (Tr. 63).

Because the ALJ properly presented the VE with a hypothetical based on Plaintiff's RFC, and relied upon the assessment of the VE as to which positions a relevant, hypothetical individual could perform given specific limitations, the VE's testimony constitutes substantial evidence to

support the ALJ's findings. The ALJ received sufficient information from the VE as to relevant past work, and relied on the VE's testimony and the job descriptions in the DOT to ensure that there was substantial evidence such an individual could perform those jobs given her limitations.

### B. The ALJ Did Not Err in Rejecting the Opinion of Dr. David R. Wilson.

Next, Plaintiff contends that the ALJ failed to state, with at least some measure of clarity, the grounds upon which the opinion of Dr. David R. Wilson was repudiated. (Pl. Br., Doc. #13 at 14). Dr. Wilson was an examining psychologist who diagnosed Plaintiff with recurrent major depressive disorder and borderline intellectual functioning. (Tr. 298). Dr. Wilson concluded that Plaintiff "simply does not appear to be capable of working at this time." (*Id.*).

In making its decision, "the ALJ must state with some particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). In determining the weight given to a claimant's medical opinions, the ALJ may look at several factors: the examining and treatment relationship between the doctor and patient, the supportability of the doctor's opinion, the consistency of the doctor's opinion with the record as a whole, the doctor's specialty, and other relevant factors. 20 C.F.R. § 404.1527(c).

A doctor's opinion may be discounted based on the length and frequency of the treatment relationship and the nature and extent of the treatment relationship. 20 C.F.R. § 404.1527(c)(2). A physician like Dr. Wilson, who only saw the claimant on a single occasion is not considered a treating physician, and his opinion is not entitled to great weight. *See Crawford v. Commissioner*

9

*of Social Security*, 363 F.3d 1155, 1160 (11th Cir. 2004). The opinion of a treating physician who has seen the claimant on a number of occasions will be afforded more weight than a doctor who has only seen the claimant once. *Id.* More weight will be afforded to a physician who has had long enough to form a longitudinal picture of the claimant's impairment. *Id.* The more knowledge a treating source has about the patient, the more weight will be given to that doctor's opinion. *Id.*

Plaintiff visited Dr. Wilson for a psychological evaluation on September 23, 2015. (Tr. 27, 294). She reported experiencing stress, saying that when she gets stressed her "heart runs away" and her "chest goes to hurting." (Tr. 294). She told Dr. Wilson she had been prescribed medication for anxiety and depression in March of 2014, after having difficulty dealing with the loss of her husband. (Tr. 294-95).

Dr. Wilson found that Plaintiff's thought processes were intact, her speech clear and normal in rate, and she denied indicators of hallucinations, delusions, or ideas of reference. (Tr. 296). Dr. Wilson often had to give her time to compose herself, and she stated she had panic attacks and was depressed sometimes. (Tr. 296).

As a result of his meeting with Plaintiff, Dr. Wilson came to the conclusion that Plaintiff was a "very depressed individual" who was "clearly having a great deal of difficulty coping and functioning at this time." (Tr. 297). He suggested her cognitive and memory deficits would "cause problems in work settings" and questioned her ability to "withstand the pressures of day to day occupational functioning." (Tr. 297-98). Dr. Wilson ultimately concluded that Plaintiff "does not appear to be capable of working at this time." (Tr. 298).

The ALJ afforded Dr. Wilson's opinions "minimal weight" because his assessment was not "consistent with the claimant's longitudinal treatment records, or her admitted daily activities." (Tr. 27). The weight afforded was based on the totality of the evidence, which showed that Plaintiff

functioned independently on a daily basis, provided for her own personal care, performed household chores, and provided care for her autistic teenage son. (Tr. 27).

The ALJ's conclusion was supported by the testimony of the claimant, the Plaintiff's function reports, and the treatment records of Dr. Borlaza, Dr. Arnold, Dr. Go, and Dr. Fernandez. Plaintiff testified in December 2015 that she could perform simple daily activities including housework, keeping track of her bills, mowing her lawn, and doing her own grocery shopping. (Tr. 44, 50-51, 197). She was also able to give primary care for her son including taking him to and from school, cooking for him, bathing him, and cleaning him after he used the bathroom. (Tr. 197). Plaintiff's mother-in-law provided a third-party function report claiming Plaintiff was able to clean, do laundry, mow her lawn, and provide care for her son. (Tr. 189).

In April 2014, Plaintiff reported to Dr. Borlaza that she could perform household chores and care for herself on a daily basis. (Tr. 260). He found that she had no standing limitations, could walk for 6-8 hours, and could lift 50 pounds regularly and 100 pounds occasionally. (Tr. 263). Plaintiff also saw Dr. Arnold in April 2014, and reported that she could perform household chores, provide care for her son, do errands, go out to eat with her sister, and attend church once or twice a week. (Tr. 267). Dr. Arnold found Plaintiff alert and oriented with a mood that was "subdued with congruent affect." (Tr. 267). She diagnosed Plaintiff with a GAF of 56, indicating that she experienced no greater than moderate functional deficits. (Tr. 26, 268).

Also in April 2014, Plaintiff presented to Dr. Go to establish care. (Tr. 272). Dr. Go reported that Plaintiff had "no observed anxiety, delusion, loose associations, flight of thought, stressed faces and or weeping." (Tr. 274). In June and August 2014, Dr. Go reported that Plaintiff was "doing well" in terms of her anxiety disorder, had not been experiencing panic attacks, and was able to handle daily stressors and rest better with use of medication. (Tr. 358, 362). In October

11

2014, Dr. Go doubled Plaintiff's medication after she complained of anxiety/depression, and reported having panic attacks. (Tr. 354). In December 2014 and February 2015, Dr. Go found Plaintiff was again doing well with her anxiety and depression and was no longer experiencing panic attacks. (Tr. 345, 349). After Plaintiff complained of anxiety and insomnia in March 2015, Dr. Go reduced her medications. (Tr. 343). In April 2015, Dr. Fernandez found that Plaintiff was not experiencing any depression, anxiety, or agitation. (Tr. 307). By May 2015 Plaintiff was back to doing well with her anxiety according to Dr. Go. (Tr. 343, 337).

Considering the totality of the Plaintiff's history, there was substantial evidence to support the ALJ's conclusion that Dr. Wilson's opinion was entitled to minimal weight. A physician's report "may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991)). The ALJ discussed Dr. Wilson's opinion in her decision and stated with particularity that she was affording minimal weight to his opinion because it was inconsistent with the longitudinal treatment record and Plaintiff's admitted daily activities. (Tr. 27). The longitudinal treatment records reflect that Plaintiff's anxiety and depression were controlled with the use of medication. Plaintiff's testimony to multiple sources reveal that she is capable of performing routine housework, caring for her autistic teenage son, and interacting with others on an occasional basis.

### C. Substantial Evidence Supports the ALJ's Findings in this Matter and the ALJ Properly Considered the VE's Testimony.

Plaintiff's final argument is that the vocational expert's testimony does not provide substantial evidence because it was based on an inaccurate and incomplete hypothetical question. (Pl. Br. at 18). Specifically, Plaintiff contends that the ALJ failed to consider claimant's depression in the hypothetical posed to the VE. (Pl. Br. 18).

For a vocational expert's testimony to be considered substantial evidence, the ALJ must present a hypothetical question that "comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). At step four of the ALJ's analysis, she must determine the Plaintiff's residual functional capacity. 20 C.F.R. § 404.1520(e). Plaintiff's RFC is determined based on all the relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). The hypothetical posed by the ALJ does not need to include every symptom of the claimant, only "the claimant's impairments." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007).

The ALJ did not pose an improper hypothetical. Her question incorporated all of Plaintiff's impairments based on all the relevant evidence. The ALJ's hypothetical asked the VE to consider a hypothetical individual with the following: (1) similar age, education, and prior work history as the claimant, (2) ability to lift 50 pounds occasionally and 25 pounds frequently, (3) could sit, stand, and walk in combination at least six hours during a work day, (4) frequently climb stairs and ramps, (5) should never climb ladders, ropes, or scaffolding, (6) frequently stoop, kneel, crouch, and crawl, (7) has residual mental restrictions limiting them to simple routine tasks with occasional contact with others including the public, but should not work in a team type position. (Tr. 62-63).

This hypothetical properly included all of the claimant's limitations, including mental impairments, that were supported by the record. Because the ALJ's hypothetical was proper and comprised all the claimant's limitations, the VE's opinion that Plaintiff can perform past relevant work is substantial evidence. Dr. Arnold concluded that Plaintiff experienced no more than moderate functional deficits. (Tr. 268). Dr. Estock found that Plaintiff could understand, remember, and carry out short and simple instructions and maintain attention and concentration

13

for extended periods up to two hours. (Tr. 75). Dr. Estock also determined she could remember locations and work procedures, and suggested that her interactions with others as well as her feedback from co-workers should be casual. (Tr. 75). The ALJ was not required to include in her hypothetical those limitations that were not supported by the record, including those of Dr. Wilson, which were properly afforded minimal weight by the ALJ. *See Graham v. Bowen*, 790 F.2d 1572, 1576 (11th Cir. 1986).

## VII. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed.

**DONE** and **ORDERED** this March 19, 2018.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE